# GERAGOS & GERAGOS

A PROFESSIONAL CORPORATION
LAWYERS
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411
TELEPHONE (213) 625-3900
FACSIMILE (213) 232-3255
GERAGOS@GERAGOS.COM

MARCUS PETOYAN        SBN 109817
Attorneys for Plaintiff,
GINA MANGRUBANG on behalf of herself,
and all others similarly situated

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GINA MANGRUBANG, on behalf of herself and all others similarly situated,<br><br>        Plaintiff,<br><br>    vs.<br><br>SUTTER BAY HOSPITALS, a California corporation,<br><br>        Defendant. | Case No.: 3:19-cv-03947-JCS<br><br>**PLAINTIFF'S NOTICE OF MOTION AND [AMENDED] MOTION FOR ATTORNEYS' FEES AND COSTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**[Declarations of Marcus Petoyan and Gina Mangrubang filed concurrently herewith]**<br><br>Judge: Magistrate Judge Joseph C. Spero<br>Courtroom: F |

*(left margin, vertical text)* GERAGOS & GERAGOS, APC · HISTORIC ENGINE CO. NO. 28 · 644 SOUTH FIGUEROA STREET · LOS ANGELES, CALIFORNIA 90017-3411

TO THE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Plaintiff GINA MANGRUBANG (hereinafter referred to as "Plaintiff"), on behalf of herself and all others similarly situated, will and hereby does, move this Court, pursuant to Federal Rule of Civil Procedure 23(h), for an order awarding an amount of $150,000 in attorneys' fees and $19,936.50 in documented litigation costs to Geragos & Geragos, APC ("Class Counsel"); and a $15,000 class representative service payment to Plaintiff from the common-fund settlement of $600,000 reached between Plaintiff and Defendant Sutter Bay Hospitals ("Defendant") (collectively as, the "Parties") with respect to the above-captioned matter.

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declarations of Marcus Petoyan and Gina Mangrubang, all papers and pleadings on file with the Court in this action, and on such oral and documentary evidence as may be presented should the Court request an additional hearing on the Motion.

DATED:  January 28, 2022                          GERAGOS & GERAGOS, APC


By:_____
    MARCUS PETOYAN
    Attorneys for Plaintiff GINA MANGRUBANG,
    on behalf of herself, and all others similarly
    situated

1

**TABLE OF CONTENTS**

I.    **INTRODUCTION**……………………………………………………………………1

II.   **ARGUMENT**……………………………………………………………….……2

      A.    **The Amount of Fees Requested Is Reasonable**……………………………...2
            1.    Class Counsel are Entitled to Lodestar Fees, Capped in Relation to the
                  Common Fund……………………………………………………...…3
            2.    A Common Fund Attorneys' Fee Award is Appropriate…………………3
            3.    Class Counsel's Lodestar Confirms that the Requested Fees are
                  Reasonable………………………………………………………………..5

      B.    **Under Any Theory the Requested Attorneys' Fees are Well Within the Range of
            Approval**………………………………………………………………………12
            1.    The Results Obtained and the Degree of Risk Assumed…………………13
            2.    Class Counsel's Contingent-Based Representation…………………………14
            3.    Class Counsel's Skill and the Complexity of the Issues……………………15

      C.    **Class Counsel's Requested Expenses Reimbursement is Proper**……………….16

      D.    **This Court Should Award the Requested $15,000 Class Representative Service
            Payment**……………………………………………………………………..17

III.  **CONCLUSION**………………………………………………………………19

**GERAGOS & GERAGOS, APC**
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

1

**TABLE OF AUTHORITIES**

2

**CASES**

3    *Aecom Energy & Construction, Inc. v. Ripley*, No. 17-cv-05398, 2018 WL 4904774

4    (C.D. Cal. July 3, 2018)……………………………………………..……………7

5    *Anderson v. Nextel Retail Stores, LLC*, 2010 U.S. Dist. LEXIS 71598

6    (C.D. Cal. filed June 30, 2010)……………………………………………………7

7    *Blum v. Stenson*, 465 U.S. 886 (1984)………………………………………………6, 7

8    *Boeing Co. v. Van Gemert*, 444 U.S. 444 (1980)………………………………….…2, 3

9    *Buccellato v. AT&T Operations, Inc.,* No. C10-00463- LHK, 2011 WL 3348055

10    (N.D. Cal. June 30, 2011)…………………………………………………………16

11    *Carter v. Anderson Merchandisers, LP,* 2010 WL 1946757

12    (C.D. Cal. filed May 11, 2010)……………………………………………………14

13    *Chanel, Inc. v. Doan*, 2007 WL 781976 (N.D. Cal. Mar. 13, 2007)……………………...10

14    *Clark v. Payless Shoesource, Inc.*, 2012 WL 3064288 (W.D. Wash. filed July 27, 2012)………...5

15    *Davis v. City of San Francisco*, 976 F.2d 1536 (9th Cir. 1992)………………………..………...6

16    *Fernandez v. Victoria Secret Stores*, LLC, 2008 WL 8150856 (C.D. Cal. 2008)………………..9

17    *Fischel v. Equitable Life Assur. Society of U.S.,* 307 F.3d 997 (9th Cir. 2002)……………….…6, 9

18    *Fischer v. SJB-P.D. Inc.,* 214 F.3d 1115, 1121 (9th Cir. 2000)…………………………………10

19    *Franco v. Ruiz Food Prods., Inc.,* 2012 WL 5941801

20    (E.D. Cal. filed Nov. 27, 2012)…………………………………………………..13-15

21    *Garcia v. Gordon Trucking, Inc.,* 2012 WL 5364575 at *10 (E.D. Cal. filed Oct. 31, 2012)………14

22    *Gardner v. GC Servs., LP,* 2012 WL 1119534 at *7 (S.D. Cal. filed Apr. 2, 2012)……………...13

23    *Garnes v. Barnhardt*, 2006 WL 249522, at *7 (N.D. Cal. Jan. 31, 2006)……………………………9

24    *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992)………………………………………7

25    *Greko v. Diesel U.S.A., Inc.,* 2013 WL 1789602 (N.D. Cal. filed Apr. 26, 2013)………………….4

26    *Guerrero v. Wells Fargo Bank, N.A.,* No. C 12-04026 WHA, 2014 WL 4351113

27    (N.D. Cal. Sept. 2, 2014)…………………………………………………………...5

28

NOTICE OF MOTION AND [AMENDED] MOTION FOR ATTORNEYS' FEES AND COSTS;
MEMORANDUM OF POINTS AND AUTHORITIES ISO
3:19-cv-03947-JCS

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

*Hajro v. U.S. Citizenship & Immigration Servs.,* 900 F. Supp. 2d 1034 (N.D. Cal. 2012)............6

*Harris v. Marhoefer*, 24 F.3d 16 (9th Cir. 1994)......................................................16

*Hopkins v. Stryker Sales Corp.,* 2013 WL 496358 (N.D. Cal. filed Feb 6, 2013)...................13

*In re Activision Securities Litigation*, 723 F. Supp. 1373 (N.D. Cal 1989)......................3, 11

*In re ATM Fee Antitrust Litig.*, 686 F.3d 741 (9th Cir. 2011)....................................6

*In re Bluetooth Headset Prods. Litig.,* 654 F.3d 936 (9th Cir. 2011)....................4, 5, 8, 11

*In re Heritage Bond Litig.*, 2005 WL 1594403 (C.D. Cal. filed June 10, 2005)....................5

*In re HPL Techs., Inc. Sec. Litig.*, 366 F. Supp. 2d 912 (N.D. Cal. 2005).......................7

*In re Linerboard Antitrust Litig.*, 2004 WL 1221350 (E.D. Pa. filed June 2, 2004)..............5

*In re Pac. Enters. Sec. City and Cnty of S.F. Litig.,* 47 F.3d 373 (9th Cir. 1994)............3

*In re Petition of Hill*, 775 F.2d 1037 (9th Cir. 1985)..........................................3

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975).................................12

*Knight v. Red Door Salons, Inc.,* 2009 WL 248367 (N.D. Cal. Feb. 2, 2009)......................15

*Morales v. Stevco, Inc.,* 2013 WL 1222058 (E.D. Cal. Mar. 25, 2013).............................14

*Nitsch v. DreamWorks Animation SKG Inc.*, No. 14-cv-04062, 2017 WL 2423161

    (N.D. Cal. June 5, 2017)....................................................................7

*Odrick v. UnionBanCal Corp.*, 2012 WL 6019495 (N.D. Cal. filed Dec. 3, 2012)...................15

*Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615 (9th Cir. 1982)..........12

*Perez v. Rash Curtis & Assocs.*, No. 4:16-CV-03396-YGR, 2020 WL 1904533

    (N.D. Cal. Apr. 17, 2020)...................................................................12

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009)..................................16

*Singer v. Becton Dickinson & Co.*, 2010 WL 2196104 (S.D. Cal. filed June 1, 2010)..............11

*Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990)................11

*Smith v. CRST Van Expedited, Inc.,* 2013 U.S. Dist. LEXIS 6049

    (S.D. Cal. filed Jan. 14, 2013).............................................................17

*Staton v. Boeing Co.,* 327 F.3d 938 (9th Cir. 2003)..........................................2, 4

*Thieriot v. Celtic Ins. Co.,* 2011 WL 1522385 (N.D. Cal. filed Apr. 21, 2011)..................13

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. No. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

*Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370 (9th Cir. 1993)……………………………………..12

*Universal Elecs., Inc. v. Univ. Remote Control, Inc.,* 130 F.Supp.3d 1331 (C.D. Cal. 2015)………7

*Van Vranken v. Atl. Richfield Co.,* 901 F. Supp. 294 (N.D. Cal. 1995)…………………………9, 17

*Vasquez v. Coast Valley Roofing, Inc.,* 266 F.R.D. 482 (E.D. Cal. 2010)…………………………17

*Vizcaino v. Microsoft Corp.,* 290 F.3d 1043 (9th Cir. 2002)……………………………………5, 12

*Whiteway v. Fedex Kinkos Office & Print Services, Inc.,* 2007 U.S. Dist. LEXIS 95398

     (N.D. Cal. 2007)……………………………………………………………………………17

*Willner v. Manpower Inc.,* No. 11-cv-02846-JST, 2015 WL 3863625

     (N.D. Cal. June 22, 2015)…………………………………………………………………16

**<u>STATUTES</u>**

Fed. R. Civ. P. 23(h)……………………………………………………………………………2, 4

**GERAGOS & GERAGOS, APC**
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3

4

5

6

7

8

9

10

11

12

On July 30, 2021, the Court issued an Order granting preliminary approval of the Class Action Settlement Agreement between Plaintiffs and Defendant Sutter Bay. [Dkt. No. 75]. A Final Fairness Hearing was held on December 10, 2021. [Dkt. No. 81]. No class members appeared at the Fairness Hearing. This Court ordered that this Motion for Final Approval of the Class Action Settlement ("Motion for Final Approval") and supplemental materials, including this Amended Motion for Attorneys' Fees and Costs (the "Motion"), shall be filed on or before January 28, 2022. This Court further ordered that upon the filing of the Motion for Final Approval it will be deemed submitted and no further hearing will be scheduled unless the Court determines it is necessary. [Dkt. No. 81].

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Pursuant to the Settlement Agreement, and subject to this Court's approval, Defendant will pay $600,000 in satisfaction of all Class Members' claims as specifically set forth in the Settlement Agreement. On September 2, 2021, Class Notice was mailed to the Class Members by Simpluris, Inc. ("Simpluris"), the appointed Claims Administrator, and settlement payments will be made to those Class Members who do not opt-out of the Settlement following the Court's final approval. Accordingly, and from the $600,000 common fund, Class Counsel seeks an attorney's fees award of $150,000; $19,936.50 in documented litigation costs and expenses. Class Counsel also seeks a reasonable $15,000 class representative service payment for Plaintiff Gina Mangrubang. This award will compensate fairly the Class Counsel for work already performed in the case and for all of the work remaining to be performed in the case, including preparation of the final-approval motion and efforts to ensure that the settlement is fairly administered and implemented. The amounts sought all fall well within the range of reasonableness under the facts and circumstances of this case.

27

28

**GERAGOS & GERAGOS, APC**
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

For the reasons set forth in greater detail below, Plaintiff respectfully submits that the requested attorneys' fees, costs and expenses, settlement administration costs, and Class Representative Service Payment are fair and reasonable, and should be approved.

## II.     ARGUMENT

### A.     The Amount of Fees Requested Is Reasonable

Federal Rule of Civil Procedure 23(h) provides that, "[i]n a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "Attorneys' fees provisions included in proposed class action agreements are, like every other aspect of such agreements, subject to the determination whether the settlement is 'fundamentally fair, adequate and reasonable.'" *Staton v. Boeing Co.,* 327 F.3d 938, 964 (9th Cir. 2003) (explaining that "[a]ttorneys' fees provisions included in proposed class action agreements are, like every other aspect of such agreements, subject to the determination whether the settlement is 'fundamentally fair, adequate and reasonable'").

The requested award is fair, reasonable, and appropriate under the California and Ninth Circuit common fund doctrines in light of the favorable results obtained by Class Counsel, the complexities of the litigation, and the contingent risk assumed by Class Counsel. [Petoyan Decl. ¶ 21-22]. As such, for the reasons set forth in greater detail below, the amount of $150,000 (25% of the Maximum Settlement Amount) in attorneys' fees sought by Class Counsel falls well within the zone of reasonableness whichever method this Court applies to evaluate the attorneys' fees requested.

### 1.     Class Counsel are Entitled to Lodestar Fees, Capped in Relation to the Common Fund

As explained by the Ninth Circuit, a "common fund" exists "when: (1) the class of beneficiaries is sufficiently identifiable, (2) the benefits can be accurately traced, and (3) the fee can

**GERAGOS & GERAGOS, APC**
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

be shifted with some exactitude to those benefiting." *In re Petition of Hill*, 775 F.2d 1037, 1041 (9th Cir. 1985). According to the Supreme Court, "the[se] criteria are satisfied when each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum amount." *Boeing Co. v. Van Gemert*, 444 U.S. 444, 479 (1980).

Here, the $600,000.00 Gross Settlement Payment is a common fund, as each Class Member will be entitled to a sum certain. Accordingly, the Court may consider the percentage-of-recovery approach when setting a cap on the requested lodestar. As explained below, because Class Counsel's requested fees are within the range specified by the Ninth Circuit, and because the Class Members here will recover a substantial amount, despite facing serious litigation risks, as enumerated herein, Class Counsel's Motion should be granted.

### 2.    A Common Fund Attorneys' Fee Award Is Appropriate

"[L]awyer[s] who recover[] a common fund . . . [are] entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). According to the Supreme Court, "the[se] criteria are satisfied when each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum amount." *Boeing Co. v. Van Gemert*, 444 U.S. 444, 479 (1980).

The common fund approach is preferable to the lodestar because: (1) it aligns the interests of class counsel and absent class members; (2) it encourages efficient resolution of the litigation by providing an incentive for early, yet reasonable, settlement; and (3) it reduces the demands on judicial resources. *In re Activision Securities Litigation*, 723 F. Supp. 1373, 1378-79 , (N.D. Cal 1989). The Ninth Circuit routinely uses the percentage of the common fund approach to determine the award of attorney's fees. *See, e.g., In re Pac. Enters. Sec. City and Cnty of S.F. Litig.,* 47 F.3d 373, 378-79 (9th Cir. 1994) (approving attorney's fee of 33 1/3%).

NOTICE OF MOTION AND [AMENDED] MOTION FOR ATTORNEYS' FEES AND COSTS;
MEMORANDUM OF POINTS AND AUTHORITIES ISO
3:19-cv-03947-JCS

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

Here, the $600,000 Maximum Settlement Payment is a common fund, as each Class Member will be entitled to a sum certain. Defendant does not oppose the requested attorneys' fee award of $150,000 to be taken from the common fund. [Petoyan Decl. ¶ 21]. As explained below, because Class Counsel's requested fees are within the range specified by the Ninth Circuit, and the terms set forth in the Settlement Agreement are fair, reasonable, and adequate, and in the best interest of the Settlement Class in light of all known facts and circumstances, including the risk of significant delay, the risk that the Settlement Class will not be certified by the Court, the various defenses asserted by Defendant, and that the Settlement is proportionate in relation to other similar wage and hour lawsuits, Class Counsel's Motion should be granted.

**3.    Class Counsel's Lodestar Confirms that the Requested Fees are Reasonable**

Federal Rule of Civil Procedure 23 provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. Proc. 23(h). FRCP 23(h) applies to requests for attorney's fees for settled class actions. *See Staton v. Boeing Co.*, 327 F.3d 938, 964 (9th Cir. 2003) (explaining that "[a]ttorneys' fees provisions included in proposed class action agreements are, like every other aspect of such agreements, subject to the determination whether the settlement is 'fundamentally fair, adequate and reasonable'").

In analyzing Rule 23(h) fee requests, courts "have an independent obligation to ensure that the award, like the settlement itself, is reasonable even if the parties have already agreed to an amount." *Greko v. Diesel U.S.A., Inc.*, 2013 WL 1789602 at *8 (N.D. Cal. filed Apr. 26, 2013) (quoting *In re Bluetooth Headset Prods. Litig.*, 654 F.3d 936, 941 (9th Cir. 2011)). For purposes of determining a reasonable fee, "courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *Greko*, 2013 WL 1789602 at *8. Generally speaking, though, "[t]he lodestar method is…preferable when calculating statutory attorney fees, whereas the

percentage-of-recovery approach is appropriate when the fees will be drawn from a common fund." *Clark v. Payless Shoesource, Inc.*, 2012 WL 3064288 at *1 (W.D. Wash. filed July 27, 2012) (citing *In re Bluetooth Headset Prods. Litig.,* 654 F.3d at 941). The percentage method is also particularly suited for common-fund settlements achieved at a procedurally early litigation stage. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 & n.5 (9th Cir. 2002) (stating that "the primary basis of the fee award remains the percentage method" and that, although the lodestar can be used as a "crosscheck of the percentage method," it should not "imply that class counsel should necessarily receive a lesser fee for settling a case quickly"). Further, and as the Court recognized in *Guerrero v. Wells Fargo Bank, N.A.,* No. C 12-04026 WHA, 2014 WL 4351113 (N.D. Cal. Sept. 2, 2014), "the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method." *Guerrero*, 2015 WL 4351113 at *3, quoting *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).

In any event, and when setting a fee award, courts can—and should—apply the lodestar method to provide "perspective on the reasonableness of a given percentage award." *Vizcaino*, 290 F.3d 1043, 1050. According to the Ninth Circuit, "[c]alculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award." *Id.*

Here, the requested fee amount is reasonable in a cross-check to the lodestar approach. "Lodestar calculations are determined by multiplying the number of hours reasonably expended during the litigation by a reasonable hourly rate." *In re Heritage Bond Litig.*, 2005 WL 1594403 at *5 (C.D. Cal. filed June 10, 2005). It is "common for a counsel's lodestar figure to [then] be adjusted upward by some multiplier reflecting a variety of factors such as the effort expended by counsel, the complexity of the case, and the risks assumed by counsel." *Id.* at *22 (citing *In re Linerboard Antitrust Litig.*, 2004 WL 1221350 at *16 (E.D. Pa. filed June 2, 2004) (recognizing that the average

- 5 -

multiplier approved in common-fund cases is 3.89), *disapproved on other grounds, In re ATM Fee Antitrust Litig*., 686 F.3d 741, 755 n.7 (9th Cir. 2011)). The multiplier is calculated by dividing the percentage fee award by the lodestar calculation. *Fischel v. Equitable Life Assur. Society of U.S.,* 307 F.3d 997, 1008 (9th Cir. 2002). Here, and based on the detailed, contemporaneously-kept time records submitted along with the concurrently filed Declaration of Marcus Petoyan, Class Counsel's unadjusted total lodestar (i.e., with no multiplier) is $112,137.50 computed as a function of the following hours and rates between Class Counsel's respective attorneys:

| Attorney | Years of Experience | Hourly Rate | Number of Hours | Total Fee |
|---|---|---|---|---|
| Mr. Petoyan | 20+ | $650 | 4 | $2,600.00 |
| Mr. Hoesly | 10 | $650 | 112.25 | $72,962.50 |
| Mr. Sarian | 2 | $350 | 78.25 | $27,387.50 |
| Mr. Geldberg | 5 | $250 | 29.25 | $7312.50 |
| Ms. Weissenburger | 1 | $250 | 7.5 | $1,875.00 |
| | | | **TOTAL LODESTAR:** | **$112,137.50** |

[Petoyan Decl. ¶ 20].

As a preliminary matter, the lodestar does not include attorney time spent on preparing the voluminous final approval materials, which Class Counsel has inevitably spent a significant amount of time on. [Petoyan Decl. ¶ 20]. Nevertheless, here, all the rates noted above, and the associated hours are reasonable. Hourly rates should be guided by the prevailing market rates for similar work performed by attorneys of comparable skill, experience, and reputation. *Blum v. Stenson*, 465 U.S. 886, 895 (1984); *Hajro v. U.S. Citizenship & Immigration Servs.,* 900 F. Supp. 2d 1034, 1054 (N.D. Cal. 2012). The rate charged by private attorneys in the same legal market, in turn, is the "prevailing market rate in the relevant community," *Davis v. City of San Francisco*, 976 F.2d 1536, 1546 (9th

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

Cir. 1992) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)), *vacated in part on other grounds by* 984 F.2d 345 (9th Cir. 1993), and the "relevant community is 'the forum district' [i.e. here] Central District of California," *Anderson v. Nextel Retail Stores, LLC*, 2010 U.S. Dist. LEXIS 71598 at *6 (C.D. Cal. filed June 30, 2010) (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992)). When setting rates, courts should use the attorneys' "current" rates, i.e., their rates at the time of the fee application. *See In re HPL Techs., Inc. Sec. Litig.*, 366 F. Supp. 2d 912, 919-20 (N.D. Cal. 2005) (explaining that the use of current rates "simplifies the calculation and accounts for the time value of money in that lead counsel ha[ve] not been paid contemporaneously").

Here, Plaintiff's attorneys billed between $250 and $650 per hour, depending on level of experience. In fact, Class Counsel discounted its normal hourly rate of $350 for an attorney with five years of experience to $250/hour.[1] [Petoyan Decl. ¶ 15]. The blended average rate is $416.66. [Petoyan Decl. ¶ 24]. According to recent case authority, the above-referenced rates are well within the range of rates recently approved by District Courts in California for complex class actions, including wage-and-hour actions. *Id; See, e.g., Aecom Energy & Construction, Inc. v. Ripley*, No. 17-cv-05398, 2018 WL 4904774, *3 (C.D. Cal. July 3, 2018) (hourly Los Angeles partner rate of $892 and hourly Los Angeles associate rate of $554 were deemed "in line with rates courts in the Central District have previously approved" and found to be "reasonable and consistent with comparable market rates"); *Nitsch v. DreamWorks Animation SKG Inc*., No. 14-cv-04062, 2017 WL 2423161, at *9 (N.D. Cal. June 5, 2017) (rates between $870 and $1,200 per hour for experienced California attorneys deemed "fair and reasonable"); *Universal Elecs., Inc. v. Univ. Remote Control, Inc.,* 130 F.Supp.3d 1331, 1337 (C.D. Cal. 2015) (finding discounted average Sidley Austin rate of

---

[1] Had Class Counsel charged the normal $350/hour rate for the 29.25 hours spent Noah Geldberg, the total fee would be $10,237. Here, at a discounted hourly rate of $250, Mr. Geldberg's total fee is only $7,312.50.

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

$768 per hour "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation" and therefore reasonable).

The rates of the Geragos attorneys are also reasonable in light of the substantial experience and skill they brought to bear on this case. The Geragos Firm has a national reputation and has been retained as counsel in hundreds of major cases. [Petoyan Decl. ¶ 16]. For example, Marcus Petoyan ("Mr. Petoyan") is rated 'AV Preeminent', the highest peer review rating available, following a detailed and thorough review by Martindale-Hubbell, one of the oldest and most respected attorney peer review organizations. [Petoyan Decl. ¶ 11]. He has also been selected as a 'Superlawyer' for each of the last 7 years , by the well-respected legal publisher Thomson Reuters, as an outstanding lawyer who has attained a high degree of peer recognition and professional achievement following a rigorous and comprehensive selection process. *Id.* Mr. Petoyan is also a member of The National Trial Lawyers, a national organization composed of the Top 100 Trial Lawyers from each state. Membership is obtained through special invitation and is extended only to those attorneys who exemplify superior qualifications, leadership, reputation, influence, stature, and profile as trial lawyers, both civil plaintiff and criminal defense. *Id.*

In addition, the law in this Circuit often supports a reasonable lodestar multiplier. Indeed, courts frequently adjust lodestar figures upward to reflect a number of "reasonableness factors," including the quality of representation and the benefit obtained for the class. *In re Bluetooth*, 654 F.3d at 941-42. In this case, Class Counsel have a total lodestar of approximately $112,137.50 without the use of any multiplier, which results in a multiplier of when compared against the $150,000 request for attorneys' fees. [Petoyan Decl. ¶ 21]. A multiplier of 1.34 is more than

NOTICE OF MOTION AND [AMENDED] MOTION FOR ATTORNEYS' FEES AND COSTS;
MEMORANDUM OF POINTS AND AUTHORITIES ISO
3:19-cv-03947-JCS

reasonable given the complexities of this case and the result achieved for the Class.[2] *Id.*; *See also, Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) ("Multipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation."). Thus, judged from this perspective, and considering the exceptionally valuable services provided by Plaintiff's attorneys and the collective experience of their firm, Class Counsel's present fee request of $150,000.00 is reasonable and should be approved.

Furthermore, Defendant does not oppose the award of attorneys' fees and costs in an amount of $150,000.00. [Petoyan Decl. ¶ 23]. Independent of this point, the amounts are entirely reasonable. *Id.* The hourly rates of the attorneys who assisted in the prosecution of this matter are in line with Class Counsel's normal billing rates and are lower than applicable market rates. *Id.*

For instance, one of the more sensible and popular methods employed by Courts in assessing an appropriate hourly rate is the *Laffey Matrix*, which is frequently used in California Federal Courts as well as by California Superior Courts. See, e.g., *Fernandez v. Victoria Secret Stores*, LLC (C.D. Cal. 2008) 2008 WL 8150856 *14-15 (showing detailed application of the matrix). The *Laffey Matrix* is a publicly available and regularly updated study of average hourly billing rates.

In order to account for regional variations in reasonable billing rates, courts have held that an adjustment from *Laffey* matrix in accordance with the locality pay differentials applicable to the federal judiciary is appropriate. *See, e.g., Garnes v. Barnhardt*, 2006 WL 249522, at *7 (N.D. Cal. Jan. 31, 2006) (Walker, C.J.) ("It is this court's practice to adjust fees drawn from the *Laffey* matrix in accordance with the locality pay differentials applicable to the federal judiciary, an agency that employs legal professionals throughout the United States. See http://www.opm.gov/oca/05tables/pdf/salhr.pdf. The Washington-Baltimore area is subject to a +15.98%

---

[2] The multiplier is calculated by dividing the percentage fee award by the lodestar calculation. *Fischel v. Equitable Life Assur. Society of U.S.*, 307 F.3d 997, 1008 (9th Cir. 2002). Here, the percentage fee award would be $150,000. $150,000 divided by the lodestar calculation of $112,137.50 equals 1.34.

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

locality pay differential, whereas the Los Angeles-Long Beach Riverside area is subject to a 23.18% locality pay differential. The discrepancy between these two percentages-6.2%-amounts to the upward adjustment from the *Laffey* rates to which Mr. McIntyre and Madrigal are entitled."); *Chanel, Inc. v. Doan*, 2007 WL 781976, at *7 (N.D. Cal. Mar. 13, 2007) (Walker, J.) (similar). Accordingly, the *Laffey* method requires the hourly rate to be adjusted based upon the cost of living in the location where the services were performed, as against the baseline. The cost of living in Los Angeles is higher in Los Angeles than the baseline (District of Columbia) and thus the appropriate hourly rate would be higher than the *Laffey* matrix fees referenced above.

The *Laffey Matrix* presently lists an hourly rate of $919 per hour for attorneys with 20+ years of experience; $676 per hour for attorneys with 8-10 years of experience; $381 for attorneys with 1-3 years of experience, all of which are in excess of the discounted rates of $650, $350, and $250 offered by Class Counsel. Attached hereto is **Exhibit "D"**, a copy of the current *Laffey Matrix*, showing the hourly rates based on experience before upward adjustment for contingency fee work and the specialized area of wage and hour class action litigation.

Plaintiff, as the party seeking fees, bears the burden of establishing the hours spent litigating the case and must present detailed time records detailing tasks completed and time spent, but need not provide comprehensive documentation, in order to prevail. *Hensley v. Eckerhart*, 461 U.S. at 434, 437 n.12 (1983); *Fischer v. SJB-P.D. Inc.,* 214 F.3d 1115, 1121 (9th Cir. 2000) (burden satisfied by listing the hours spent and "identifying the general subject matter of [the] time expenditures.").

While the production of comprehensive documentation is not required for the purpose of awarding legal fees, Class Counsel nevertheless has submitted its complete, unredacted fee bills should the Court wish to examine the work performed in more detail. Attached to the Declaration of Marcus Petoyan is **Exhibit "C"**, a timesheet of all billing entries in this case. [Petoyan Decl. ¶ 18].

- 10 -

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

These statements reflect the date, amount, and nature of work Plaintiff's attorneys performed. *Id.* The hours billed on this case were reasonable as described above and further detailed below.

Furthermore, even if this Court does not consider the *Laffey Matrix* or Common Fund Approach, the total lodestar of $112,137.50 plus a 1.34 multiplier, totaling $150,000—which does not include upwards of 30+ hours spent on preparing the final approval motion and accompanying materials—is more than reasonable and supported by appropriate documentation. [Petoyan Decl. ¶ 20]. As such, $150,000.00 should be adopted as the final fee award.

**B.    Under Any Theory the Requested Attorneys' Fees are Well Within the Range of Approval**

"[C]ourts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods.,* 654 F.3d at 941. In the Ninth Circuit, the benchmark for a fee award in common fund cases is 25% of the recovery obtained. *See id.* at 942 ("Where a settlement produces a common fund for the benefit of the entire class, . . . courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record for any 'special circumstances' justifying a departure."). Courts must "justify any increase or decrease from this amount based on circumstances in the record." *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). *See also In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377-78 (N.D. Cal. 1989) (stating that "nearly all common fund awards range around 30%"). This is particularly true when class members stand to recover a significant amount of their potential damages and when class counsel's lodestar exceeds the fee request. *See Singer v. Becton Dickinson & Co.*, 2010 WL 2196104 at *8-9 (S.D. Cal. filed June 1, 2010) (departing from the benchmark and awarding fees equal to 33.33% of the settlement fund when class members would recover "110% of the claimed losses").

The Ninth Circuit has identified a number of factors the Court may consider in assessing whether an award is reasonable, including: (1) the results achieved, (2) the risk of litigation, (3) the

skill required and quality of work, and (4) the contingent nature of the fee and the financial burden carried by the plaintiffs. *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1048–50 (9th Cir. 2002). However, this list is not exhaustive, and different factors may predominate in different factual contexts. *Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1376 (9th Cir. 1993) (citing *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)).

### 1. The Results Obtained and the Degree of Risk Assumed

The most important factor in determining whether attorneys' fees are reasonable is the result obtained. *See Kerr v. Screen Extras Guild, Inc*., 526 F.2d 67, 70 (9th Cir. 1975); *Perez v. Rash Curtis & Assocs.*, No. 4:16-CV-03396-YGR, 2020 WL 1904533, at *21 (N.D. Cal. Apr. 17, 2020).

While each of the Parties respectively believe they would have prevailed on the merits had the case not settled, they each have concluded that settlement was preferable to the uncertainty and risk attendant with litigating the case further. Based on its own investigation and evaluation, Class Counsel determined that the terms set forth in the Settlement Agreement in light of all known facts and circumstances, including the risk of significant delay, the risk that the Settlement Class will not be certified by the Court and the various defenses asserted by Defendant. [Petoyan Decl. ¶ 10]. For example, Defendant alleged: (1) During the relevant class period, Defendant had paid out $192,926 in meal and rest break premiums to the 73 respiratory therapists; 3,817 separate premium payments, or an average of 52 payments per employee; (2) Defendant alleged that Plaintiff had received 65 premiums, 42 rest breaks and 23 meal break premiums; (3) Defendant alleged Plaintiff's State overtime claims were barred as a matter of law by the "CBA exemption" pursuant to California Labor Code § 514; (4) Defendant alleged Plaintiff's final wages and waiting time penalties fail as a matter of law, as Plaintiff remains employed by Defendant.

Additionally, Class Counsel obtained undertook this litigation on a contingent-fee basis, requiring them to shoulder not only the enormous cost of attorney time, but all of the substantial

- 12 -

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

costs of what has been two and a half years of litigation. [Petoyan Decl. ¶ 21]. *See Hopkins v. Stryker Sales Corp.,* 2013 WL 496358 at *3 (N.D. Cal. filed Feb 6, 2013) (in awarding more than the 25% benchmark, explaining that "[c]lass [c]ounsel took a significant risk investing in this case" because it "was conducted on an entirely contingent fee basis against a well-represented [d]efendant" and because [a]ll of the financial risk of litigation was therefore assumed by [c]lass [c]ounsel, whose fee arrangement with [p]laintiffs required [c]lass [c]ounsel to bear all of the costs of litigation"); *See also, Franco v. Ruiz Food Prods., Inc.,* 2012 WL 5941801 at *16 (E.D. Cal. filed Nov. 27, 2012) (stating that "an award of one-third of the common fund as attorneys' fees has been found appropriate" when an "action [i]s undertaken on a contingency fee basis and [when], as such, [c]lass [c]ounsel invest[] time, effort, and money with no guarantee of recovery").

Thus, in light of the results obtained and the risks assumed, the amount of $600,000 in payment is fair, reasonable, and adequate and in the best interest of the putative Settlement Class. [Petoyan Decl. ¶ 10].

### 2.  Class Counsel's Contingent-Based Representation

Class Counsel's fee request is further justified based on the contingent nature of what will be nearly three years of representation when fees may finally be paid. As recently explained by the Northern District, conducting a case "on an entirely contingent fee basis against a well-represented [d]efendant" supports an upward adjustment from the benchmark. *Hopkins,* 2013 WL 496358 at *3. *See also Gardner v. GC Servs., LP,* 2012 WL 1119534 at *7 (S.D. Cal. filed Apr. 2, 2012) (in concluding that a 30% fee award was reasonable, explaining that "class counsel took this case on a contingent fee basis and had to forego other financial opportunities to litigate it"); *Thieriot v. Celtic Ins. Co.,* 2011 WL 1522385 at *6 (N.D. Cal. filed Apr. 21, 2011) (in awarding a 33% fee, explaining that "[i]t is an established practice to reward attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might be paid nothing at all");

- 13 -

*Carter v. Anderson Merchandisers, LP,* 2010 WL 1946757 at *2 (C.D. Cal. filed May 11, 2010) (in awarding the requested fees, stating that "[t]he case was undertaken on a contingency fee basis" and that "[c]lass [c]ounsel advanced all costs, despite the risk of no recovery in this case, representing a significant financial burden").

Here, there is no question that Defendant was represented by competent and astute defense counsel—but also that Class Counsel—both of which have a significant presence—had to forego other financial opportunities to litigate. Accordingly, these factors weigh in favor of approving Class Counsel's requested fees.

### 3.    Class Counsel's Skill and the Complexity of the Issues

As explained by the Eastern District, "California wage and hour law is extremely complex and the statutory/administrative language can be particularly difficult to parse." *Morales v. Stevco, Inc.,* 2013 WL 1222058 at *3 (E.D. Cal. Mar. 25, 2013). *See also Franco*, 2012 WL 5941801 at *16 (explaining that "specialist skills" are required "to litigate the legal theories relating to wage and hour law and labor law"); *Garcia v. Gordon Trucking, Inc.,* 2012 WL 5364575 at *10 (E.D. Cal. filed Oct. 31, 2012) (in awarding 33% of a common-fund settlement, concluding that "th[e] case required substantial skill in litigating complex legal issues, particularly in light of the uncertainty in California law as it relate[s] to [p]laintiffs' meal break claims"). Class Counsel has considerable experience in prosecuting complex class-wide cases, including, in particular, wage-and-hour actions. [Petoyan Decl. ¶ 12-13]. The specialized skill of Class Counsel in this area of the law is an asset to the Class Members. [Petoyan Decl. ¶ 16].

In addition, this fee takes into consideration documented hours and efforts expended in working this case up and obtaining settlement in the matter. Class Counsel has vigorously advocated for Plaintiff and all members of the putative class since the filing of the operative Complaint. This has included propounding and responding to extensive discovery requests, investigating discovery

- 14 -

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

responses and documents produced, the applicable law as to the facts discovered regarding the alleged claims of Plaintiff and the potential defenses to those claims. [Petoyan Decl. ¶ 3]. Class counsel consulted with and retained accounting services to extrapolate and compile immense e-discovery and document production as they relate to Plaintiff and the initial class which has since, for the purpose of this settlement, been reduced to cover non-exempt respiratory therapists. Class Counsel succeeded in negotiating a Settlement that provides speedy and substantial monetary and equitable relief for the Class. [Petoyan Decl. ¶ 10].

Thus, applying the above standards to the facts, Class Counsel's request for 25% of the total maximum settlement amount as fees is well within the zone of reasonable attorneys' fees awards for the quality of services Class Counsel rendered and the results they obtained for the Class.

## C.    Class Counsel's Requested Expense Reimbursement is Proper

Class Counsel are collectively seeking reimbursement of $19,936.50, which includes documented litigation costs and expenses actually incurred as well as for the modest, but real fees and costs that will be incurred, in the documenting the Settlement and obtaining Judgment in the action. "These costs include investigatory fees, court filing fees, process serving fees, expert fees, copy and scanning costs, and electronic research fees. Fees such as those are routinely reimbursed." *Franco,* 2012 WL 5941801 at *22; *See also Odrick v. UnionBanCal Corp.*, 2012 WL 6019495 at *6 (N.D. Cal. filed Dec. 3, 2012) (in a common-fund settlement, noting that class counsel were seeking reimbursement of "costs for a retained expert, mediation, travel, copying, mailing, legal research, and other litigation-related costs," and concluding that "reimbursement of these costs and expenses in their entirety is justified"); *Knight v. Red Door Salons, Inc.,* 2009 WL 248367 at *7 (N.D. Cal. Feb. 2, 2009) (in a common-fund settlement, stating that class counsel's expenses "relate to online legal research, travel, postage and messenger services, phone and fax charges, court costs, and the

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

1    costs of travel"; that "[a]ttorneys routinely bill clients for all of these expenses"; and that "it is

2    therefore appropriate for counsel here to recover these costs from the [s]ettlement [f]und").

3        Class Counsel are entitled to recover "those out-of-pocket expenses that would normally be

4    charged to a fee-paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994). Expenses that

5    are reasonable, necessary, directly related to the litigation, and normally charged to a fee-paying

6    client are recoverable. *See, e.g., Willner v. Manpower Inc.,* No. 11-cv-02846-JST, 2015 WL

7    3863625, at *7 (N.D. Cal. June 22, 2015); *Buccellato v. AT&T Operations, Inc.,* No. C10-00463-

8    LHK, 2011 WL 3348055, at *2 (N.D. Cal. June 30, 2011).

9        In addition, Defendant does not dispute or otherwise object to the cost award requested by

10   Class Counsel if the request does not exceed $19,936.50, which it does not. [Petoyan Decl. ¶ 26].

11   While Class Counsel has approximately $34,172.50 in expenses, the present request is for only

12   $19,936.50. *Id; See* Exhibit "C" for documented expenses. Thus, the total costs expended and

13   projected are well within the customary range of costs associated with litigation of this scope and

14   recoveries of this magnitude. *Id.* Accordingly, the request should therefore be approved in full.

15
16       **D.    This Court Should Award the Requested $15,000 Class Representative
            Service Payment**

17
18       Under the terms of the Settlement Agreement, Class Counsel contends, and Defendant do not

19   contest, that the proposed payment of $15,000 to Plaintiff for her efforts in bringing and prosecuting

20   this case is fair and appropriate. [Petoyan Decl. ¶ 27]. According to the Ninth Circuit, "[i]ncentive

21   awards are fairly typical in class action cases" and "are intended to compensate class representatives

22   for work done on behalf of [a] class, to make up for financial or reputational risk undertaken in

23   bringing the action, and, sometimes, to recognize their willingness to act as a private attorney

24   general." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009) (emphasis

25   removed), *vacated on other grounds*, 688 F.3d 645, 660 (9th Cir. 2012). Courts should consider "the

risk to the class representative in commencing suit, both financial and otherwise," as well as "the amount of time and effort spent by the class representative" and "the personal benefit (or lack thereof) enjoyed by the class as a result of the litigation." *Smith v. CRST Van Expedited, Inc.,* 2013 U.S. Dist. LEXIS 6049, at \*16 (S.D. Cal. filed Jan. 14, 2013) (quoting *Van Vranken v. Atl. Richfield Co.,* 901 F. Supp. 294, 299 (N.D. Cal. 1995)) (internal quotations omitted)

Here, the requested Class Representative fee of $15,000 is fair and reasonable in light of the time and resources expended by Plaintiff Gina Mangrubang—the sole Class Representative for 77 Class Members—throughout the course of this litigation. [Petoyan Decl. ¶ 28]. For the past two years, Plaintiff has spent late nights and early mornings facilitating discussions with groups of similarly situated respiratory therapists and employees of Defendant all in efforts to advance and promote the Class. *Id.* Additionally, Plaintiff has contributed a significant amount of time performing substantial "in house" investigations of Defendant's alleged wrongdoings and always served as the main point of contact for other employees' inquiries throughout the day. [Mangrubang Decl. ¶ 6]. Notwithstanding her midnight phone calls from multiple Respiratory Therapists and research hours spent trying to understand the laws around meal and rest periods, in my conversations with Plaintiff, she estimates she has spent *at least* 15-24 hours a week for several years working on this case. [Petoyan Decl. ¶ 28].

Not only that, but Plaintiff Mangrubang "undertook the financial risk that, in the event of a judgment in favor of [Sutter Bay] in this action, [she] could have been personally responsible for any costs awarded in favor of [Sutter Bay]." *Vasquez v. Coast Valley Roofing, Inc.,* 266 F.R.D. 482, 491 (E.D. Cal. 2010); *See also, Whiteway v. Fedex Kinkos Office & Print Services, Inc.,* 2007 U.S. Dist. LEXIS 95398 (N.D. Cal. 2007) (a wage and hour misclassification case lost on summary judgment, after the case was certified, the named Plaintiff was assessed costs in the sum of $56,788.). The risk of payment of Defendant's costs, in of itself alone, is a sufficient basis for an award of the requested

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

enhancement sum. Few individuals are willing to take this risk, and it is clear that the appointed Class Representatives here championed a cause on behalf of others with potentially huge monetary risks.

In addition, by agreeing to settle the case in the best interest of the Class Members, Plaintiff has given up the right to pursue individual claims for unpaid wages, unpaid overtime compensation, and other penalties. [Petoyan Decl. ¶ 28]. Instead of seeking an individual settlement for my claims, where she could have recovered substantially more for such penalties, she chose to prosecute this matter on behalf of a Class of similarly situated Respiratory Therapists. *Id.* The actions on the part of the named Plaintiff and Class Counsel were taken to advance the litigation on behalf of all Class Members.

It is true there can be no class action without a class member assuming the great fiduciary responsibilities of as Class Representative. [Petoyan Decl. ¶ 28]. Plaintiff Gina Mangrubang's time, effort, and risk made this case, and a favorable Settlement for all Class Members, possible. *Id.* Thus, the requested award should be approved.

## III.    <u>CONCLUSION</u>

Based on the foregoing, Plaintiffs respectfully request that, at the time the Court rules on Plaintiffs' motion for final approval of the settlement, this Court should enter an Order approving the award of attorneys' fees in the amount of $150,000, and $19,936.50 in documented litigation costs; and a $15,000 class representative payment to Plaintiff Gina Mangrubang, pursuant to the terms set forth in the Settlement Agreement.

///

///

///

///

NOTICE OF MOTION AND [AMENDED] MOTION FOR ATTORNEYS' FEES AND COSTS;
MEMORANDUM OF POINTS AND AUTHORITIES ISO
3:19-cv-03947-JCS

**GERAGOS & GERAGOS, APC**
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

1    DATED:  January 28, 2022                    GERAGOS & GERAGOS, APC

2

3                                                By: _____

4                                                    MARCUS PETOYAN
                                                 Attorneys for Plaintiff GINA MANGRUBANG,
5                                                on behalf of herself, and all others similarly
                                                 situated
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 19 -

# EXHIBIT "D"

# LAFFEY MATRIX

| History | Case Law | See the Matrix | Contact us | Home |

| | | | Years Out of Law School * | | | | |
|---|---|---|---|---|---|---|---|
| Year | Adjustmt Factor** | Paralegal/ Law Clerk | 1-3 | 4-7 | 8-10 | 11-19 | 20 + |
| 6/01/21- 5/31/22 | 1.006053 | $208 | $381 | $468 | $676 | $764 | $919 |
| 6/01/20- 5/31/21 | 1.015894 | $206 | $378 | $465 | $672 | $759 | $914 |
| 6/01/19- 5/31/20 | 1.0049 | $203 | $372 | $458 | $661 | $747 | $899 |
| 6/01/18- 5/31/19 | 1.0350 | $202 | $371 | $455 | $658 | $742 | $894 |
| 6/01/17- 5/31/18 | 1.0463 | $196 | $359 | $440 | $636 | $717 | $864 |
| 6/01/16- 5/31/17 | 1.0369 | $187 | $343 | $421 | $608 | $685 | $826 |
| 6/01/15- 5/31/16 | 1.0089 | $180 | $331 | $406 | $586 | $661 | $796 |
| 6/01/14- 5/31/15 | 1.0235 | $179 | $328 | $402 | $581 | $655 | $789 |
| 6/01/13- 5/31/14 | 1.0244 | $175 | $320 | $393 | $567 | $640 | $771 |
| 6/01/12- 5/31/13 | 1.0258 | $170 | $312 | $383 | $554 | $625 | $753 |
| 6/01/11- 5/31/12 | 1.0352 | $166 | $305 | $374 | $540 | $609 | $734 |
| 6/01/10- 5/31/11 | 1.0337 | $161 | $294 | $361 | $522 | $589 | $709 |
| 6/01/09- 5/31/10 | 1.0220 | $155 | $285 | $349 | $505 | $569 | $686 |
| 6/01/08- 5/31/09 | 1.0399 | $152 | $279 | $342 | $494 | $557 | $671 |
| 6/01/07-5/31/08 | 1.0516 | $146 | $268 | $329 | $475 | $536 | $645 |
| 6/01/06-5/31/07 | 1.0256 | $139 | $255 | $313 | $452 | $509 | $614 |
| 6/1/05-5/31/06 | 1.0427 | $136 | $249 | $305 | $441 | $497 | $598 |
| 6/1/04-5/31/05 | 1.0455 | $130 | $239 | $293 | $423 | $476 | $574 |
| 6/1/03-6/1/04 | 1.0507 | $124 | $228 | $280 | $405 | $456 | $549 |
| 6/1/02-5/31/03 | 1.0727 | $118 | $217 | $267 | $385 | $434 | $522 |
| 6/1/01-5/31/02 | 1.0407 | $110 | $203 | $249 | $359 | $404 | $487 |
| 6/1/00-5/31/01 | 1.0529 | $106 | $195 | $239 | $345 | $388 | $468 |
| 6/1/99-5/31/00 | 1.0491 | $101 | $185 | $227 | $328 | $369 | $444 |
| 6/1/98-5/31/99 | 1.0439 | $96 | $176 | $216 | $312 | $352 | $424 |
| 6/1/97-5/31/98 | 1.0419 | $92 | $169 | $207 | $299 | $337 | $406 |
| 6/1/96-5/31/97 | 1.0396 | $88 | $162 | $198 | $287 | $323 | $389 |
| 6/1/95-5/31/96 | 1.032 | $85 | $155 | $191 | $276 | $311 | $375 |
| 6/1/94-5/31/95 | 1.0237 | $82 | $151 | $185 | $267 | $301 | $363 |

The methodology of calculation and benchmarking for this Updated Laffey Matrix has been approved in a number of cases. See, e.g.,DL v. District of Columbia, 267 F.Supp.3d 55, 69 (D.D.C. 2017)

\* "Years Out of Law School" is calculated from June 1 of each year, when most law students graduate. "1-3" includes an attorney in his 1st, 2nd and 3rd years of practice, measured from date of graduation (June 1). "4-7" applies to attorneys in their 4th, 5th, 6th and 7th years of practice. An attorney who graduated in May 1996 would be in tier "1-3" from June 1, 1996 until May 31, 1999, would move into tier "4-7" on June 1, 1999, and tier "8-10" on June 1, 2003.

\*\* The Adjustment Factor refers to the nation-wide Legal Services Component of the Consumer Price Index produced by the Bureau of Labor Statistics of the United States Department of Labor.